IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RICHARD L. LUFT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00289-O-BP |
| § | |
| DEPARTMENT OF THE ARMY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* Plaintiff Richard Luft ("Luft") filed an Amended Petition on May 19, 2022, alleging that the Department of the Army ("the Army") wrongfully terminated him because of his disabilities and seeking review of the decision of an administrative law judge ("ALJ") under 5 U.S.C. § 7703. ECF No. 30. On February 13, 2023, the Army filed a Motion for Summary Judgment, Brief in Support, and Appendix in Support (filed under seal). ECF Nos. 41, 42, 44. Luft responded on February 28, 2023 (ECF No. 47), and the Army filed its reply on March 14, 2023 (ECF No. 48). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Army's Motion for Summary Judgment (ECF No. 41) and **DISMISS** Luft's claims with prejudice.

**I.    BACKGROUND**

Luft wants his job back and damages incurred since the Army terminated his employment. ECF No. 30 at 2. He formerly worked as an Architect GS-12 for the Army Corp of Engineers ("the Corps") in the Engineering Branch of the Fort Worth District. ECF No. 42 at 8. He was successful in his role as an architect at a lower level in the Corps, but struggled once he received a promotion from a GS-11 to a GS-12 Architect in 2016. *Id.* The new job brought with it more duties,

expectations, and responsibilities. *Id.* at 9. Luft did not perform well in his new position, and in May 2019 the Corps placed him on an informal and then a formal performance improvement plan ("PIP"). *Id.* His performance did not improve to what his supervisor viewed as a satisfactory level. *Id.* The Army determined that even though on paper he was qualified, he was unable to successfully perform the increased demands of his new position. *Id.* The Army ultimately terminated his employment in December 2020. *Id.*

Luft appealed to the Merit Systems Protection Board ("MSPB"), claiming that his removal was unjust because his "work product was unfairly judged." ECF No. 30 at 1-2. He also alleged an affirmative defense that his supervisor, Jennifer Dewitt ("Dewitt"), discriminated against him based on his disability because "she did not wish to deal with his health issues or otherwise believe the issues were real." *Id.* at 2. After compiling a comprehensive evidentiary record and conducting a hearing, the ALJ issued a forty-page decision that considered and rejected Luft's claims. ECF Nos. 42 at 9; 44-14 at 1464-511. The ALJ found substantial evidence to support the Army's conclusion that Luft's job performance was unacceptable. ECF Nos. 42 at 10; 44-14 at 1503-04. Further, he concluded that Luft did not meet his burden of proof regarding his disability discrimination claim, as there was no evidence to support his claim of disparate treatment or lack of reasonable accommodation. *Id.* Luft appealed to this Court. ECF No. 30 at 1. The Army filed a Motion for Summary Judgment, which is now ripe for review.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c);

*Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### B.  MSPB Appeals Standard

This suit is a "mixed case" appeal involving review of the MSPB's determination that the Army's termination of Luft's employment was proper under 5 U.S.C. §§ 7702, 7703(b)(2)(c), and Luft's claims that the Army's action was discriminatory, prohibited by federal statue as outlined in the Civil Service Reform Act, specifically, the Rehabilitation Act, 29 U.S.C. §§ 791, et seq. ("RA"). *See Aldrup v. Caldera,* 274 F.3d 282, 286-87 (5th Cir. 2001).

As a mixed-case appeal, the Court reviews the discrimination claims de novo and the remaining claims based upon the administrative record. *Aldrup*, 274 F.3d at 287 (citing 5 U.S.C. § 7703(c)). Judicial review of MSPB "decisions is limited." *Bryant v. Dep't of Vet. Affairs*, 26 F.4th 1344, 1346 (Fed. Cir. 2022). Courts "review[ ] non-discrimination claims presented to the MSPB based on the administrative record 'and will uphold the [ALJ]'s determinations unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law.'" *Williams v. Wynne*, 533 F.3d 360, 373 (5th Cir. 2008) (quoting *Aldrup,* 274 F.3d at 287 and citing 5 U.S.C. § 7703(c)(1)-(3)).

An arbitrary decision is one "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007) (citation omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion." *Id.* A court may not re-weigh the evidence or substitute its own judgment for that of the ALJ, even if the court finds that the evidence weighs against the ALJ's decision. *Wancke v. Harris,* 619 F.2d 412, 416 (5th Cir. 1980).

    **C.**    **Americans with Disabilities Act/Rehabilitation Act Claims**

Federal employees' disability-discrimination claims arise under the RA, 29 U.S.C. §§ 790, et seq, which provides that: "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive Agency[.]" 29 U.S.C. § 794(a). An "individual with a disability" is any individual who "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services." *Id.* § 705(20)(A). In analyzing claims under the RA, the Court uses the same standards applicable to claims brought under the Americans with Disabilities Act ("ADA"), including the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). See *Cohen v. Univ. of Texas Health Sci. Ctr.,* 557 F. App'x 273, 276-79 (5th Cir. 2014) (ADA and RA are jointly interpreted so that jurisprudence concerning either act is applicable to both) (citations omitted).

"In a discriminatory termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of h[is] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp.*" 411 U.S. at 793; *EEOC v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014). Where a plaintiff offers remarks as direct evidence, courts apply a four-part test to determine whether such comments are sufficient to overcome a motion for summary judgment. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996)). Direct

5

evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897 (5th Cir. 2002). To qualify as direct evidence of discrimination, workplace comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Auguster v. Vermilion Par. Sch. Bd.,* 249 F.3d 400, 405 (5th Cir. 2001) (alterations in original) (quoting *Krystek v. Univ. of S. Miss.,* 164 F.3d 251, 256 (5th Cir. 1999)).

When a plaintiff offers indirect evidence, he must establish a prima facie case of discrimination under the ADA/RA. "A plaintiff must prove that (1) he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) an adverse employment decision was made 'solely because of this disability.'" *Houston. v. Tex. Dep't of Agric.,* 17 F.4th 576, 585-86 (5th Cir. 2021); *McKay v. Johanns,* 265 F. App'x 267, 268 (5th Cir. 2008) (citing 29 U.S.C. § 794(a).

Under the modified *McDonnell Douglas* test, a Title VII plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence to survive a motion for summary judgment. 411 U.S. at 802-04; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). Once he establishes a prima facie case, there is a presumption of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If the defendant makes such a showing, the burden shifts back to the plaintiff to present evidence of a genuine dispute that the articulated "reason is not true, but instead a pretext for discrimination," or that the defendant's "reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is [the Plaintiff's] protected characteristic." *Vaughn v. Woodforest Bank*, 665

6

F.3d 632, 636 (5th Cir. 2011) (citation omitted).

After the *McDonnell Douglas* analysis reaches the pretext stage, the question for the Court considering the motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of his disability. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad,* 309 F.3d at 897. "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may, therefore, be enough to prevent summary judgment or judgment as a matter of law. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Sandstad*, 309 F.3d at 897.

However, this showing is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

### III.   ANALYSIS

**A.   Substantial evidence in the record supports the ALJ's findings that Luft's removal was justified.**

In the administrative hearing before the MSPB, the ALJ's task was to determine whether the record provided substantial evidence supporting the Army's finding that Luft's work performance was unacceptable. ECF No. 44-14 at 1484. Performance is unacceptable if it fails to meet one or more critical elements of the performance standard for the employee's position. 5

U.S.C. §§ 4301(3); 5 C.F.R. § 432.103(h). The ALJ in this case found that the record supported such a conclusion. ECF No. 44-14 at 1471-73.

To sustain the ALJ's decision, the Army must demonstrate that substantial evidence proved that Luft's performance was unacceptable before it placed him on a PIP and continued to be unacceptable during the term of the PIP. 5 U.S.C. § 4301 (3); 5 C.F.R. § 432.103(h). The Army only needed to establish that Luft's performance was unacceptable in a single critical element of his position. *Id.* at § 432.105. Additionally, the Army argues that no evidence in the record shows that the ALJ's decision was arbitrary or capricious. ECF No. 42 at 32. The Army provided the ALJ and this Court with almost two thousand pages related to the informal and formal review of Luft's work product from his direct supervisors and colleagues, which shows that his performance and work product development were unsatisfactory, even after a year and half of unsuccessful efforts to improve them. *Id.* at 24-30; *see* 44, 44-1-14.

In upholding the Army's termination decision, the ALJ cited "the agency's extensive, contemporaneously created documentation of the appellant's performance deficiencies both before and during the PIP period" and reviewed the evidence that supported his conclusion. ECF No. 44-14 at 1533-1545. This evidence included DeWitt's testimony that leading up to the formal PIP, "Mr. Luft's work issue basically boiled down to (1) sloppy work with several errors; (2) failure to follow instructions; (3) poor communication including withholding information, and is manipulative; (4) lack of skills, regardless of training received; and (5) lack of basic understanding of the final deliverable and how to develop it." *Id.* 44-6 at 413. The ALJ noted that other of Luft's co-employees in the Fort Worth Division corroborated this evidence in sworn testimony and emails contained in the record. *Id.* at 44-5 at 195, 217; 44-6 at 414-83; 44-14 at 1534.

The ALJ also reviewed Luft's work product development during the PIP period looking for evidence of improvement. *Id.* at 44-14 at 1492. The ALJ cited to the PIP documentation,

8

including specific examples of Luft's unacceptable performance and notes from weekly meetings during the PIP that detailed those examples. *Id.* at 1478. The record contains examples of Luft never responding to the requests of others on the team as to room dimensions or information needed to clarify inaccuracies in his work. *Id.* at 1487. Other documentation and emails from various Project Managers who worked with Luft showed repeated times when he improperly saved drawings to a local computer drive instead of the master design file, isolating his changes from persons in other disciplines working on the same project. *Id.* at 44-6 at 412, 414-17, 420-22, 425, 427.

Moreover, the ALJ found that the record shows technical errors in many of Luft's drawings, including conflicting intersection points between columns and walls, stairs rendered without treads, and missing landings and railings. *Id.* The ALJ noted the sworn testimony of Dewitt and Metoyer, another architect on Luft's team, which showed that Luft refused to utilize the Design Checklist that all other members of the team used. ECF No. 44-14 at 1687, 1704-05, 1801-40. The ALJ noted that this was one of the many tools that Luft did not use to improve his work product. *Id.*

Luft argues that all of the information that Dewitt provided to him in his performance reviews had "numerous alleged issues and fabrications;" that "everything she brings up is fabricated," "all lies," "bogus reviews;" and that "she's getting away with it. ECF No. 47 at 10, 11, 12, 16. He offers additional unsubstantiated accusations that other supervisors and Corps employees slandered him, lied, and were corrupt. ECF No. 47 at 9-10; 15-17. Further, he asserts that the Army designed his PIP to cause him to fail, that he repeatedly asked for and was denied the training required to do the job properly, and yet, despite that, all of his work product still was acceptable. *Id.*

9

The ALJ found that other than Luft's conclusory, subjective testimony, he did not provide any evidence to support these allegations. *Id.* at 1483-85, 89-90, 94, 96. Luft merely testified that he believed that his work was satisfactory and provided evidence of his good performance previews conducted prior to his promotion and emails from customers about the quality of some already-completed jobs. *Id.* at 1497; ECF No. 47 at 18-40. The ALJ noted that credible evidence in the record refuted Luft's statements. ECF No. 44-14 at 1534-43. For instance, Luft contended that he needed certain software training to be successful and repeatedly testified that he was purposefully denied the opportunities for training. *Id.* at 1853, 1863-68. However, the ALJ found Luft's testimony inconsistent with evidence of his participation in the software training over multiple years. ECF No. 44-14 at 1481. The evidence showed that Luft not only took the training courses more than once over several years, but that he touted his experience when documenting his own contributions to the Army. ECF Nos. 42 at 27; 44-6 at 407; 44-14 at 1204, 1212, 1807.

Further, DeWitt and Hill, an Engineering Manager on one of his projects, also noted that Luft frequently did not complete his work according to architectural standards or in compliance with the Design Checklist. *Id.* at 1765-1800. Other architects whom the Army brought on to support Luft's projects to complete them on deadline or within budget agreed with these conclusions. *Id.* at 1494. The record supports the ALJ's conclusion that Luft's performance deficiencies far exceeded any one technical issue attributable to a lack of software skills, regardless of the importance of those skills. *Id.*

Finally, Luft asserted that his termination resulted from disability discrimination. ECF Nos. 42 at 28; 44-2 at 38-41. The ALJ found no evidence in the record showing that the Army did not accommodate Luft's disability, that it subjected him to disparate treatment based on his disability, or that his disability was a motivating factor in his termination. ECF No. 44-14 at 1497-1503. He

also found that Luft presented no evidence of discriminatory animus or similarly situated non-disabled employees whom the Army treated more favorably. *Id.* at 1497-1502.

The Court is not to reweigh the evidence or second guess the ALJ, but only to ensure that his decision was not arbitrary, capricious, or unsupported by the evidence. *Wancke,* 619 F.2d at 416. Considering the ALJ's thorough decision, the Army's relevant summary judgment evidence, and the lack of any verified evidence or testimony provided by Luft, the Court concludes that substantial evidence supports the ALJ's decision. *See Aldrup,* 274 F.3d at 287. Luft's subjective claims that his work met Army standards, without more, provide no basis for setting aside the ALJ's decision affirming the Army's termination. Thus, the Court should **GRANT** the Army's Motion on this issue.

### B.     Luft has provided no evidence establishing disability discrimination.

Luft alleges that the Army fired him because of his disability and his unfulfilled request for accommodations. ECF Nos. 30 at 1-2; 47 at 3-7.  Because Luft presented no direct evidence of discriminatory animus, the Court evaluates his claims under the *McDonnell Douglas* framework.

#### 1.     Prima Facie Case

The Army contends that summary judgment should be granted because Luft's prima facie claim falls short on its second and fourth prongs. ECF No. 42 at 41. It first argues that Luft is not "otherwise qualified" because he did not perform "the essential element of any government job… to appear for work…and to complete assigned tasks within a reasonable period of time." *Id.* (citing *Hypes ex. Rel. Hypes v. First Commerce Corp.* 134 F.3d 721, 727 (5th Cir. 1998)). In support of this claim, the Army offered evidence that Luft (1) did not complete assigned tasks, requiring others to finish the assignments, and (2) did not complete tasks in a reasonable amount of time. ECF Nos. 42 at 43; 44-6 at 414-483. Multiple colleagues along with DeWitt testified in the administrative hearing that Luft's performance was unsatisfactory for his GS-12 work grade. ECF

11

No. 44-6 at 414-483. His work product was "consistently sloppy or mislabeled or incomplete." *Id.* at 321, 391, 413-15. He could not recognize, accept, or cure deficiencies or follow instructions. *Id.* at 398, 413-14. He practiced poor communication, had inadequate leadership skills, and did not demonstrate basic architectural skills such as the use of proper industry-accepted terms. *Id.* at 308, 321, 350, 393, 399, 413-14.

To show that he was qualified for his job, Luft could have offered evidence that (1) "he could perform the essential functions of the job in spite of his disability," or (2) "a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Morris v. Harris Cnty. Constable Precinct One,* 851 F.3d 413, 417 (5th Cir. 2017). Luft did not provide any evidence to raise a fact issue on either point. Instead, he contended that he was good at his job, except in areas that the Army did not properly train him to manage. ECF No. 47 at 7-11. In support of his contention, Luft offered performance evaluations from the years in his prior position at a GS-11 work grade and his own statements about the quality of his work. ECF No. 47 at 25-33. This evidence was insufficient to raise a fact issue for the jury on whether Luft was "otherwise qualified" for his job.

The Army next argues that there is no issue of material fact suggesting that it terminated Luft's employment solely on the account of a disability, as the fourth element of the prima facie case requires. ECF No. 42 at 44. The Army provided evidence documenting the many concerns DeWitt and others had about Luft's work. ECF Nos. 42 at 44-14 at 1690-98, 1765-800, 1801-1840. This evidence shows that the Army provided Luft with informal and formal counseling for over a year and a half to improve his work performance to an acceptable level. ECF No. 44-6 at 224-31, 242-47, 249-53, 254. Additionally, it shows that several other of his colleagues were not interested in working with Luft again based on his poor job performance. *Id.* at 412, 420-22, 425, 427, 448, 520. Even Luft recognized in his pleadings that his removal was at least in part because DeWitt

did not like him, that they had political disagreements, and that he complained to her too much. ECF No. 30 at 1; 47 at 1-14.

Luft provided no evidence that he was qualified for his previous position or that his disability was the sole reason for his removal. Accordingly, Luft did not establish a prima facie case of discrimination, and the Court should grant the Army's Motion on this point. Even if Luft were able to raise a question of fact, he still would not prevail because the Army provided evidence of a legitimate, nondiscriminatory reason for its decision to terminate Luft, and Luft did not show that this reason was a pretext for discrimination or that his protected class was a reason for his termination.

### 2. Legitimate Non-Discriminatory Reason

The Army contends its legitimate, nondiscriminatory reasons for terminating Luft were his poor performance and his noncompliance with the PIP. *Id;* ECF Nos. 42 at 5, 44-6 - 44-14. In support of this argument, the Army points to evidence that other employees noticed and reported concerns about Luft's competence and timeliness. ECF Nos. 42 at 17; 44-6 at 414-17, 428. Tindell, another architect on Luft's team, raised concerns about Luft's productivity and inability to use standard naming conventions in his drawings. *Id.* Pace, an interior designer on the team, complained that she could not complete her responsibilities of fitting furniture into a project because of numerous problems and errors in Luft's floor plan. *Id.* Patel, an Architect/Design Manager complained about the numerous errors on another project. *Id.* He noted as examples that the ceiling finishes were not labeled, and there were overlapping symbols and unnecessary lines. *Id.* at 448.

Between July 2019 and July 2020, Dewitt met with Luft and made copious notes documenting his struggles to coordinate and execute basic projects. ECF Nos. 42 at 18-19; 44-6 at

347, 356-58, 361, 383, 391, 464-469. She and Luft mapped out improvement and tracking tools and met several times so that she could provide feedback and monitor his improvement. *Id.*

On July 6, 2020, Dewitt placed Luft on a formal PIP. ECF Nos. 42 at 19; 44-6 at 262-269. Because Luft needed time to deal with recently diagnosed health issues, Dewitt abated the PIP and reinstated it in September 2020 to accommodate his request. ECF No. 44-6 at 260-61. Between September and October 2020, they met every week, and Dewitt made notes after each meeting. *Id*. The notes showed that Luft did not satisfy any of the requirements needed to show improvement. *Id.* Emails between Dewitt and Luft and from coworkers to Dewitt during this period also showed that Luft was not improving. ECF Nos. 42 at 24-25; 44-4 at 151, 44-6 at 242-247, 249-253, 282-84, 285-86, 317-18.

Luft maintains that the agency provided him with no formal training, and that his work product was acceptable. ECF Nos. 44-4 at 138, 139; 44-6 at 305; ECF No. 47 at 25-41. However, he only provided performance reviews from years prior to his promotion to GS-12 and emails from previous customers commenting on some finished jobs. ECF No. 47 at 25-41.

The Army articulated a legitimate, non-discriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993). Because the Army met its burden of production, the burden shifted to Luft to raise a genuine issue of material fact by showing either that the proffered reasons were a pretext for discrimination, or that his protected class status was a motivating factor for the adverse employment action.

### 3. Pretext

To establish pretext, Luft "must put forward evidence rebutting each of the non-discriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,

220 (5th Cir. 2001). He "may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted) (internal quotation marks omitted). He cannot establish pretext by relying solely on his subjective belief that discrimination has occurred. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997). A subjective belief that he was discriminated against is the crux of Luft's entire legal action. His lack of evidence showing pretext via either approach is fatal to his discrimination claim.

The Army argues that Luft cannot provide evidence showing that it terminated him because of discriminatory intent or that the reasons provided for his termination were false. ECF No. 42 at 46-47. Luft did not address the Army's reasons for why his performance reviews were unacceptable. *See* ECF No. 47. Nor did he offer any evidence other than his subjective statements rebutting the testimony and evidence of other architects, engineers, interior designers, and project managers that his work product was poor. ECF No. 42 at 22-25; 44-6 at 412, 420-22, 425, 427, 448, 520.

Luft provided no evidence of disparate treatment. *See* ECF No. 47. His evidence consisted only of his testimony that he believed his work quality was good; he was frustrated with DeWitt; and he requested unidentified reasonable accommodations that the Army did not provide. ECF No. 44-14 at 1845-46. Luft did not state the nature and extent of his disability or any of the accommodations that he required. *See Id.* at 1845-90. Further, he offered no evidence that any one of the dozen or so employees who testified or provided documentation was not credible. *Id; see* ECF No. 47.

Even if Luft believed that the Army's reason for his termination was faulty, this does not equate to pretext. *See Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 924-25 (5th Cir. 2009) (per curiam) ("The plaintiff has not necessarily proven pretext by showing the

facts underlying the employer's reason for the adverse employment action are factually incorrect."); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."). "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).

Luft has not carried his burden to put forth evidence from which a reasonable trier of fact could conclude that the Army's legitimate, non-discriminatory reason for his removal was false. To the contrary, the Army conclusively provided legitimate performance reasons for his removal. Luft did not present evidence to show that the Army actually discriminated against him based on his disability. Accordingly, the Court should grant the Army's Motion as to Luft's discrimination claim under the RA.

### C. Luft has not offered evidence to raise a fact issue on a harassment claim.

In its Motion, the Army liberally interpreted Luft's petition to possibly make a harassment claim. ECF No. 42 at 48. Luft did not allege any facts or elements that he must prove to establish harassment or a hostile work environment claim under the RA, nor did he address this specific claim in his response to the Army's Motion. *See* ECF No. 47. Accordingly, although the Army mentions this claim in its Motion, Luft offered no evidence to support such a claim, and the Court should grant the Army summary judgment on any claim that Luft made for harassment or hostile work environment, to the extent that the Court can construe his pleadings to assert such a claim.

### IV. CONCLUSION

The Army is entitled to summary judgment because the MSPB ALJ's decision was not arbitrary or capricious, and substantial evidence in the record supports his decision. Further, Luft

did not meet his summary judgment burden to prove discrimination based on a disability under the *McDonnell Douglas* framework. Therefore, Judge O'Connor should **GRANT** the Army's Motion for Summary Judgment and **DISMISS** Luft's claims against the Army **WITH PREJUDICE**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on April 27, 2023.

 

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE